IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:11-CV-143-D

| | |
|---|---|
| ALICIA A. EDWARDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's-35 & 37). Plaintiff has filed a response to Defendant's motion (DE-39), and the time for filing any further responses or replies has expired. Accordingly, the matter is now ripe for adjudication, and has been referred to the undersigned for the entry of a Memorandum and Recommendation pursuant to 28 U.S.C. § 636(b)(1). (DE-40). For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-35) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-37) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for disability insurance benefits ("DIB") on December 16, 2008, alleging that she became unable to work on November 18, 2006. (Tr. 61). This application was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge

1

("ALJ"), who determined that Plaintiff was not disabled during the relevant time period in a decision dated June 23, 2010. *Id.* at 61-71. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on May 20, 2011, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-5. Plaintiff filed the instant action on July 18, 2011. (DE-6).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
>
> 42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by

2

substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).
>
> Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. (Tr. 63). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) degenerative disc disease; 2) non-insulin dependent diabetes mellitus; 3) neuropathy; 4) asthma; 5) hypertension; and 6) obesity. *Id.* at 64. However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id* at 64-65. With regard to Listing 1.04, the ALJ made the following specific findings:

3

> The claimant's representative argues that the results of the most recent lumbar spine MRI call for the application of Listing 1.04 in this case. It is true that the results of this diagnostic study confirm "slight" contact between the LS-S1 disc protrusion and the exiting Sl nerve roots. (Ex. 14F:3). It is likewise true that the recently submitted treatment notes from the claimant's neurologist, Rangasamy Ramachandran, M.D., observed a slight loss of strength proximally and distally in the upper and lower extremities, trace deep tendon reflexes, sensory loss in the left lower extremity, feeble peripheral pulses, and positive straight-leg raising on the left side in March 2010. (Ex. 14F:1-2). However, the claimant walked with an "all right" gait. (Ex. 14F:2). She did not exhibit a loss of motor function or the "neuro-anatomic distribution of pain" necessary in order to meet the criteria of Listing 1.04A either. With regard to Listing 1.04B, there is no evidence of spinal arachnoiditis in this case. Turning to Listing 1.04C, the claimant's musculoskeletal impairments do not cause "an inability to ambulate effectively without assistance," as defined in Listing 1.00B2b. The claimant testified that she does not use an assistive device, let alone one that "limits the functioning of both upper extremities." Listing 1.00B2b(l). Dr. Ramachandran did not mention a gait abnormality or an inability on the claimant's part to "to walk at a reasonable pace on rough or uneven surfaces ... to use standard public transportation ... to carry out routine ambulatory activities, such as shopping and banking, [or] ... to climb a few steps at a reasonable pace with the use of a single hand rail." Listing 1.00B2b(2). Accordingly, I reject the claimant's representative's argument with respect to Listing 1.04.
>
> *Id.* at 65.

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions. *Id.* at 65-69. Specifically, the ALJ found that:

> the claimant retains the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she should be given the option to sit or to stand at will. The claimant retains the ability to push or to pull occasionally with the lower extremities, and to occasionally bend, crouch, crawl, squat, kneel, balance, and climb. She is able to reach overhead with her upper extremities occasionally, and to handle and finger items with her left (non-dominant) hand frequently.
>
> *Id.* at 65.

The ALJ then determined that Plaintiff was unable to perform her past relevant work. *Id.*

4

at 69. However, based upon the testimony of a vocational expert ("VE"), the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id*. at 69-70. Notably, the VE specifically testified that there were jobs that Plaintiff could perform even when her need to sit and stand at will was considered. *Id*. at 44-45. Accordingly, the ALJ determined that Plaintiff was not under a disability from November 18, 2006 through June 23, 2010. *Id.* at 70.

Plaintiff's first assignment of error asserts that the ALJ "improperly evaluated [Plaintiff's] medical conditions under Listing 1.04 for spinal disorders." (DE-36, pg. 8). Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence. However, this Court must uphold Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, her claims are without merit.

Moreover, the ALJ's findings are clearly supported by substantial evidence. During several examinations, Plaintiff had full range of motion and/or full strength in her lower extremities. (Tr. 286, 293, 306, 313, 318-319, 434, 440, 450). A number of straight leg raising tests were negative. *Id.* at 286, 293, 313. Likewise, Plaintiff often demonstrated a normal gait. *Id.* at 293, 312, 434, 450, 486. A January 9, 2007 MRI showed cervical and lumbar disc protrusions without significant neural or foraminal compromise. *Id*. at 319. On January 2, 2008, the degenerative changes in Plaintiff's lumbar spine were described as "minimal." *Id.* at 293. Plaintiff denied any weakness during an examination conducted that day. *Id*. at 312. During a

5

June 16, 2008 examination, Plaintiff noted that she intended to start walking for exercise.  *Id*. at 270.  Dr. Lillian Horne opined on June 25, 2009 that Plaintiff could:  1) occasionally lift 50 pounds; 2) frequently lift 25 pounds; and 3) stand, walk, or sit about six hours in an eight hour workday.  *Id.* at 408.  Similar findings were made by Dr. Jack Drummond on September 24, 2009.  *Id.* at 425.  Plaintiff underwent a Doppler study of her lower extremities on March 15, 2010, which was "essentially normal."  *Id*. at 488.  A March 25, 2010 MRI of Plaintiff's lumbar spine was largely described as "unremarkable."  *Id.* at 487.  The degenerative disc disease observed was deemed "mild."  *Id.*

During her testimony, Plaintiff noted that she had driven herself to the hearing.  *Id.* at 18.  The drive was about 45 minutes, and she generally drove every day.  *Id.*  She had never been prescribed a TENS unit or any kind of assistive device.  *Id*. at 26.  Plaintiff indicated that she was an usher at her church, which requires her to stand for an hour or more.  *Id*. at 30.  However, standing for this length of time is painful for her.  *Id*.  She testified that swimming was her only hobby, and that she had last swam the summer before her hearing.  *Id*. at 34.

Because the ALJ's findings were supported by the aforementioned substantial evidence, Plaintiff's primary assignment of error is without merit.

Finally, Plaintiff alleges that "[t]he testimony given by the VE at the hearing is inconsistent with Social Security Ruling 83-12 which states that unskilled jobs are not conducive to a sit/stand option."  (DE-36, pg. 10).  Social Security Ruling 83-12 does indicate that "[u]nskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will."  SSR 83-12, 1983 WL 31253 at *4.  Nonetheless, SSR 83-12 does not support Plaintiff's argument because it also states that: "[i]n cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base."  *Id.*  That is

6

precisely what the ALJ did. As the Fourth Circuit has noted:

> [SSR 83-12] acknowledges that there are jobs that allow sit/stand options. It directs the agency to consult with a VE to assess the impact of that option on the occupational base. The Ruling does not prescribe a formula for assessing what jobs are available . . .
>
> Walls v. Barnhart, 296 F.3d 287, 291 (4th Cir. 2002).

Here, the ALJ complied with the requirements of SSR 83-12 and was entitled to rely on the VE's testimony. *Id.* Accordingly, this assignment of error is also without merit.

## **Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-35) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-37) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Friday, July 06, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE